GABRIEL HERNÁNDEZ MORALES ET AL., Plaintiffs and Appellants, v. WENCESLAO CARABALLO, Defendant and Appellee.

No. 10420. Argued June 1, 1951.—Decided June 18, 1951.

*Francisco González, Jr.,* for appellants.   *R. R. Rivera Correa* for appellee.

MR. ACTING CHIEF JUSTICE TODD, JR., delivered the opinion of the Court.

The District Court of Puerto Rico, Humacao Section, granted defendant's motion for summary judgment under Rule 56 (*b*) (*c*) of the Rules of Civil Procedure.[1]   The plaintiffs moved for reconsideration and attached two affidavits to their motion.   Defendant did not present any additional evidence.   The court heard the parties and denied the motion for reconsideration.   The plaintiffs appealed and maintain that the court erred in dismissing the complaint.

This is an action of revendication and for damages.   It is alleged in the complaint, in brief, that Santiago Morales and Úrsula Hernández Rivera, as husband and wife, acquired,

---

[1] Said motion was based on an affidavit of defendant's attorney and on a certificate of the Registrar of Property of Caguas.   Even though the plaintiffs filed neither opposing motion nor affidavits, they did file a certified copy of a public deed.   We shall hereinafter refer to these documents.

under claim of construction and on a lot of the Municipality of Gurabo, the house described; that Úrsula Hernández Rivera died intestate on December 21, 1918 leaving, among other properties, the undivided half which, because of the conjugal character thereof, belonged to her in said property, and as her only and universal heirs, her brothers Gabriel and Isidoro Hernández Rivera; and the surviving spouse in the usufructuary quota; that neither Gabriel nor his heirs ever partitioned or liquidated the inheritance from their predecessor with the widower, Santiago Morales, neither during the latter's lifetime nor after his death, with his heirs; that Gabriel Hernández Rivera died in January 1923 without having executed a will, plaintiffs herein being his heirs; that ever since June 1937 the defendant, Wenceslao Caraballo, without title or right thereto and without plaintiffs' consent, has been in possession of the entire property described above, including plaintiffs' undivided interest, and despite having been requested by the latter to deliver the material possession thereof, has refused to comply with their request and continues in possession of said interest knowing that it belongs to the plaintiffs. In the second cause of action, the civil fruits produced or which should have been produced by plaintiffs' interest from 1937, amounting to $1,368, are claimed. This complaint was filed September 25, 1946.

On June 17, 1950 the defendant, with the court's permission, filed an amended answer denying the essential averments of the complaint and alleging on the contrary that the house sued for was built by Isabel Matilde Lloréns, Santiago Morales' second wife, Úrsula Hernández Rivera having had no share in said property since it was community property of Santiago Morales and Isabel Matilde Lloréns. As special defenses he alleged that the complaint does not state facts constituting a cause of action; that plaintiffs' action, if any, is barred pursuant to § 1857 of the Civil Code; that the defendant is a third party mortgagee since he acquired his title from

a person who had it recorded in the Registry, said defendant not being aware either from the Registry or by his own personal knowledge that the plaintiffs had any right whatsoever with respect to said property; that according to the records in the Registry of Property of Humacao the house was built by Isabel Lloréns while married to Santiago Morales; that subsequently Isabel Lloréns acquired by inheritance the one-half share corresponding to her husband in the house, when the latter died, under a will executed on September 5, 1935 instituting her as sole heir; that later Juan Jiménez García filed an action of debt against Isabel Lloréns, and said action having been decided against her, the property herein was auctioned off and Juan Jiménez García acquired it; that on June 8, 1936 the latter sold the house to the defendant by public deed which was recorded on that same day.

Based on these same defenses, the defendant filed his motion for summary judgment, to which he attached an affidavit of his attorney, R. R. Rivera Correa, and a certificate of the Registry of Property of Caguas.

In his affidavit the attorney merely states that he has studied thoroughly the documents submitted to him by the defendant, he then summarizes the contents of the certificate issued by the Registrar of Property of Caguas and ends saying:

"7. *That according to defendant's statements,* he has been in possession of said house, ever since June 8, 1937 with proper title, as owner, publicly, peacefully and uninterruptedly up to this date, that is, for 13 years and 22 days, and between him and its previous owners they have been in possession thereof in the same concept and condition for over 10 years, the house appearing recorded in the Registry under claim of construction since June 2, 1936 at 1:00 o'clock p. m." (Italics ours.)

The certificate of the Registry verifies the statements contained in the defenses set up in the answer.

The plaintiffs, although they filed no opposing affidavits

to the motion for summary judgment, did offer and it was admitted at the hearing, a certified copy of deed No. 118, assigning rights and shares, executed September 25, 1926, before Notary Miguel Rodríguez Alberty, by Isidoro Hernández Rivera on one side and Santiago Morales and his wife, Isabel Matilde Lloréns, on the other. Isidoro Hernández Rivera appeared in said deed as an abintestate heir of his sister Úrsula Hernández Rivera, the first wife of the other appearing party, Santiago Morales, and it was stated therein that the properties left by Úrsula Hernández Rivera and which belonged to the conjugal partnership between her and Santiago Morales included the house involved in this suit and which is described. It is further stated that the said house was constructed on a lot of the Municipality, while Santiago Morales was married to Úrsula Hernández Rivera, without having been recorded in the Registry. In said deed, Isidoro Hernández Rivera, in his capacity as heir of his sister Úrsula Hernández Rivera, assigned and conveyed in favor of Santiago Morales all the rights and actions corresponding to him in said house (and another) for the sum of $400, that is, $200 apiece, and in the third clause it was set forth as follows:

"THIRD: The party, Mrs. Lloréns Quintero, Santiago Morales Dávila's second wife, states by way of explanation and to speak truly that her appearance herein has no other purpose than to expedite the business or contract between her husband, Santiago Morales Dávila, and the other party, Isidoro Hernández Rivera, *wishing at the same time to make it* specifically, I mean, *specially clear that the properties involved in this contract have never belonged to the community partnership existing at present between her and her above-mentioned husband, Santiago Morales Dávila, because they were in fact acquired by him and his first wife Úrsula Hernández Rivera, during Mr. Morales Dávila's fisrt marriage, as precedingly stated.*" (Italics ours.)

It was based on these allegations and documents that the lower court rendered summary judgment dismissing the complaint, having arrived at the conclusion that there is no genu-

ine issue of facts, inasmuch as, since no defect invalidating defendant's title appears from the Registry, the latter was a third person pursuant to § 34 of the Mortgage Law. It held moreover that "Likewise there is no allegation at all in the complaint to the effect that the defendant, before acquiring the property, was aware that part thereof belonged to the plaintiffs or of the nullity of the record in the Registry."

The plaintiffs, we repeat, moved for reconsideration of the judgment and joined to their motion two affidavits made by José C. Rivera and Francisco Jiménez González. The defendant filed no opposition to said motion nor any affidavit to challenge the contents of those filed by the plaintiffs. The motion having been submitted by the parties by memoranda, the court denied the reconsideration sought.

José C. Rivera's affidavit, in brief, is to the effect that he was born in Gurabo, and is married to Pura Hernández Morales, Gabriel Hernández' legitimate daughter and full niece of Úrsula Hernández, Santiago Morales' first wife, said Santiago Morales also being her uncle; that the lot on which the house in question is located was given in usufruct by the Municipality of Gurabo to Santiago Morales while the latter was married to Úrsula Hernández prior to 1909 and the latter subsequently built the house with money of the conjugal partnership between him and his first wife, Úrsula Hernández, and paid the taxes thereon until Úrsula Hernández' death on December 21, 1918; that it is not true that Isabel Lloréns built said house while married to Santiago Morales, for said marriage took place after 1918; that neither Úrsula Hernández' nor Gabriel Hernández' heirs were made parties to the action instituted by Juan Jiménez García against Isabel Lloréns wherein the properties involved in this suit were attached; that when the attachment was entered in the registry, Santiago Morales had not recorded the house inasmuch as he had died, wherefore the attachment was entered with the

defect that the house did not appear recorded either in his or Isabel Lloréns's name; that before the attachment was entered, Santiago Morales and his second wife, Isabel Lloréns, purchased from Isidoro Hernández, Úrsula Hernández' brother and heir, the other interest belonging to Isidoro Hernández since Úrsula Hernández' death, as appears from deed No. 118, *supra*, and in which Isabel Lloréns formally admitted that the house had been acquired by Santiago Morales and his first wife, Úrsula Hernández; that the defendant, Wenceslao Caraballo, had personal knowledge of the origin of said house and, therefore, that the plaintiffs were the owners of the interest involved in this suit, since he was born and always lived in Gurabo and had personal knowledge of the contents of deed No. 118, *supra*, and of the defect of the alleged title which Juan Jiménez García and the defendant himself fraudulently recorded in the Registry, from information given the defendant by different persons, among them the affiant who subsequently showed the deed personally to the defendant.

Francisco Jiménez González swore that he was born in Gurabo where he has always lived; that he has known defendant Wenceslao Caraballo ever since he can remember; that he knew Santiago Morales and his first wife, Úrsula Hernández, until both died; that Santiago Morales has always been engaged in commerce, having his establishment in the house involved in this suit, the affiant having been Morales' clerk for many years, and where he met the defendant since they were young and before Úrsula Hernández died; that the said house was acquired by Santiago Morales while married to Úrsula Hernández; that when said house was attached by Juan Jiménez García in a suit against Isabel Lloréns, he had the store under his control; that subsequently the defendant, Wenceslao Caraballo, visited him and asked leave to look over the interior of the house because Jiménez García had put it for sale and had offered it to Caraballo and to him; that he

showed the house, except the yard, to the defendant and reminded him that the plaintiffs, namely, Gabriel Hernández' children, had rights on the house, because Isidoro Hernández had already sold it to Santiago Morales and his second wife, Isabel Lloréns; that 'this happened before Wenceslao Caraballo purchased from Jiménez García; that Wenceslao Caraballo, before purchasing, came back again to ask him permission to see the yard, to which he consented and told him that the house had no sanitary facilities because·they used those of the adjoining house, in which Santiago Morales lived with Úrsula Hernández and later with his second wife, Isabel Lloréns.

██ Taking into consideration the averments of the complaint and the affidavits and the certified copy of deed No. 118, *supra*, presented by the plaintiffs and the allegations of the answer and the affidavit of defendant's counsel and the certificate of the registry of property, presented by the defendant, can it be held that there is no genuine issue of facts in the instant case, as decided by the court *a quo?* We believe that there is and that the error assigned was committed.

In the first place the affidavit of defendant's attorney, R. R. Rivera Correa, does not comply with the requirements of Rule 56 (*e*) of the Rules of Civil Procedure where it provides that "Supporting and opposing affidavits shall be made *on personal knowledge*, shall set forth such facts as would be admissible in evidence and *shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . .*" (Italics ours.) Said counsel barely refers to the contents of the certificate of the registry of property and sets forth what the defendant has told him as to the time during which he has been in possession of the house. Undoubtedly, the affiant is not competent to testify to the matters stated in his affidavit. *Hettinger & Co.* v. *District Court,* 69 P.R.R. 128 and cases and authorities cited at pp. 133–4.

Regardless of the attorney's affidavit, however, the court could render summary judgment on the basis of the certificate of the registry, should the latter have been sufficient, since Rule 56 authorizes district courts to enter summary judgments even though the motion not be based on affidavits.

■■ Assuming, without deciding, that summary judgment lay on the basis of the certificate of the registry filed by the defendant, notwithstanding that the plaintiffs had presented the certified copy of deed No. 118, *supra*, the situation changed when the motion for reconsideration was filed together with the affidavits of Rivera and Jiménez, which were not challenged in any manner whatsoever by the defendant. Even though in the original complaint the facts set forth in deed No. 118 and in the affidavits of Jiménez and Rivera were not alleged, we have already held that, under these circumstances, the complaint may be regarded as though it were actually amended to conform it to what is set forth in the affidavits. *Hettinger & Co.* v. *District Court, supra*, p. 133. The fact that the affidavits were filed with the motion for reconsideration, does not alter the situation. In *Ramos* v. *People*, 67 P.R.R. 600, 607 we said that although the court did not err in dismissing the complaint in the absence of any challenge against certain affidavits filed by the defendant, it did err in failing to reconsider its judgment when the plaintiff filed with his motion for reconsideration affidavits which not only tended to sustain the averments of the complaint but which contradicted the affidavits filed by the defendant as to the material fact of the prescription of the action, since "This material fact which arises despite those affidavits could not be decided summarily by the court. It should be elucidated and decided on evidence presented at the trial . . ."

Likewise we believe that the questions of fact arising from the pleadings, documents, and affidavits in the instant case as to whether or not the defendant knew, before acquiring it, that the house belonged, not to Isabel Lloréns, but to Úrsula Hernández' heirs, despite the record to the contrary

in the registry, precluded the rendition of summary judgment. Since the plea of the 10-year ordinary prescription advanced by the defendant depended on whether his possession was in good faith and with a proper title—§ 1857 of the Civil Code—neither did summary judgment lie on such plea inasmuch as its determination depended on the facts controverted by the plaintiffs through the affidavits of Rivera and Jiménez, deed No. 118 and the averments of the complaint as against the certificate of the registry and the allegations of defendant's answer. Apparently the lower court, in deciding the case, did not take into consideration the questions of fact contained in the aforesaid affidavits, which tend to show that the defendant had personal knowledge, before acquiring the house, thus not being a third party, that said house always belonged to Santiago Morales and to his first wife, Úrsula Hernández and also, by deed No. 118, *supra*, of the acknowledgment to the same effect made by Isabel Lloréns, Santiago Morales' second wife. Whether these facts, which tend to challenge defendant's good faith and proper title, are true or not, could only be determined in the proper trial since the defendant did not deny them at all.

As stated in *Walling* v. *Fairmont Creamery Co.*, 139 F. 2d 318, 322: "On appeal from an order granting a defendant's motion for summary judgment the circuit court of appeals must give the plaintiff the benefit of every doubt. (Authorities)," since as previously stated, ". . . the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, all doubts are resolved against him . . . . . The object of the motion is to separate the formal from the substantial issues raised by the pleadings, and the court examines evidence on the motion, not to decide any issue of fact which may be presented, but to discover if any real issue exists. . . . ."

The judgment will be reversed and the case remanded for further proceedings.